IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MAGNOLIA PEARL, LLC; AND MAGNOLIA PEARL TEXAS LLC <br><br> Plaintiffs, <br><br> v. <br><br> APT DESIGNS INC. D/B/A/ THE PAPER LACE, <br><br> Defendant. | § § § § § § § § § § § § §   CIVIL ACTION NO. 1:24-CV-01098 |

## PETITION FOR DECLARATORY JUDGMENT

COME NOW Plaintiffs, Magnolia Pearl, LLC and Magnolia Pearl Texas, LLC (collectively "Magnolia Pearl"), and bring this action for declaratory judgment against Defendant, APT Designs Inc. d/b/a The Paper Lace ("APT"), for the purpose of determining a question of actual, immediate controversy between the parties. Magnolia Pearl alleges as follows:

## INTRODUCTION

1.  Magnolia Pearl is a leader in the fashion movement, sometimes referred to as art wear.

2.  Magnolia Pearl has been featured widely in the media from, *Texas Monthly* to the *New York Times*.

3.  Celebrities, musicians, and entertainers are fans and supporters of the brand.

4.  The designer Betsey Johnson has been buying Magnolia Pearl clothing for years. Johnson has described Magnolia Pearl founder and designer Robin Brown as "my Vivienne Westwood, my Alexander McQueen."

5.  Robin Brown started Magnolia Pearl in 2001 with handbags she sold out of her

home in Bandera, Texas.

6. Today Magnolia Pearl is headquartered in Fredericksburg, Texas. It has grown from Brown's home to a company that employs approximately 1200 people.

7. Magnolia Pearl sells its clothes and accessories through independent retailers, a large retail operation, its own retail locations, including its Fredericksburg flagship store, and its website.

8. Boutiques that carry Magnolia Pearl merchandise must agree, among other things, "not to market or sell copies or imitations of Magnolia Pearl merchandise of the work of any design that mimics or cheapens the image of Magnolia Pearl." Form Agreement Attached as **Exhibit 1**.

9. On or about September 11, 2023, Magnolia Pearl sent an acknowledgment to the boutiques which carry Magnolia Pearl's products. That communication requested the boutiques to acknowledge their obligation not to carry certain brands including APT. Attached as **Exhibit 2**.

10. On October 16, 2023, APT sent a demand letter to Magnolia Pearl claiming that acknowledgment was defamatory and constituted intentional interference with APT's business relationships. Attached as **Exhibit 3**.

11. Magnolia Pearl makes high-end clothes and protects its brand by not selling its products next to what it believes are lesser constructed and lesser priced products, such as those offered by APT.

12. This suit seeks a declaration that Magnolia Pearl's September 11, 2023 acknowledgement is neither defamatory nor tortious interference with APT's business relationships.

## PARTIES

13. Plaintiff Magnolia Pearl, LLC is a Texas limited liability company located at 461

Split Rail Crossing, Fredericksburg, TX 78624.

14. Plaintiff Magnolia Pearl Texas, LLC is a Texas limited liability company located at 461 Split Rail Crossing, Fredericksburg, TX 78624

15. None of the members of Magnolia Pearl are Georgia residents.

16. Defendant APT Designs Inc. d/b/a The Paper Lace is a Georgia corporation with its principal place of business located at 2390 Saxony Trace, Alpharetta, Georgia 30005.

## NATURE OF CLAIM

17. This is an action for declaratory judgment, pursuant to 28 U.S.C. § 2201, to determine an actual case or controversy between Magnolia Pearl and APT regarding whether the September 11, 2023 e-mail correspondence between Magnolia Pearl and its customers as well as the Acknowledgment of Magnolia Pearl Wholesale License Form constitutes defamation or tortious interference.

18. An actual controversy exists between the parties because APT sent Magnolia Pearl a demand letter on October 16, 2023 seeking $29,218.32 in damages, its "continuing" attorney's fees, and demanding a retraction of Magnolia Pearl's communication with its own business partners. Should Magnolia Pearl not settle this dispute, APT claims that Magnolia Pearl will be statutorily liable for the attorney's fees necessary for APT to prosecute its claims up to and through a trial. Subsequently, separate and apart for the demand for attorney fees, APT claimed that Magnolia Pearl caused it at least $96,449.00 in damages.

## IV. JURISDICTION AND VENUE

19. Pursuant to 28 U.S.C. § 1332 this Court has subject matter jurisdiction because the parties are citizens of different states and the amount in controversy exceeds $75,000.

20. This Court has personal jurisdiction over Magnolia Pearl and APT because they

each have continuous and systematic contacts with Texas and because the harm caused by APT's demand letter is felt in Texas and in this District.

21. Magnolia Pearl is headquartered within this judicial district and division and has suffered actual harm from APT's direction of its demand letter to Magnolia Pearl in this judicial district and division.

22. APT availed itself of Texas law when it sent a letter into this judicial district and threatened to sue Magnolia Pearl. As was foreseeable, those actions caused harm to Magnolia Pearl in this judicial district and division for acts that occurred in this judicial district and division. Specifically, APT's demand letter complains of a communication that originated in this judicial district and was transmitted to third parties in this judicial district. Thus, at least in part, both Magnolia Pearl's sending of the Acknowledgement and any ordered retraction would occur solely in this district.

23. Among APT's demand is that Magnolia Pearl retract its statements made in this district. Such a retraction was harm Magnolia Pearl's brand which is headquartered in this judicial district. Further, the statement in question was sent to third parties in this judicial district. Thus, APT's demand would require the retraction of a statement made and delivered in this judicial district.

24. This action arises directly out of the demand letter that APT sent to this judicial district. That demand letter did not simply ask Magnolia Pearl to refrain from certain actions but demanded that Magnolia Pearl act or face a lawsuit. When a specific communication into a state causes tortious harm, personal jurisdiction exists over the party who made the communication.

25. Upon information and belief, APT wholesales its products to stores in Texas and within this judicial district and division. APT does not provide a location finder for its products;
footer below
4

PD.46857874.1

however, APT's presence throughout Texas is ascertainable by internet searches.

26. APT makes its products available through Landers Spirit Collections at the Dallas Market Center, located in Dallas, Texas.

27. As recently as October 2023, APT presented its products at the Dallas Market Center, posting on its social media that the brand was in Texas for the event. APT has repeatedly offered its products to buyers at the Dallas Market Center.

28. APT products are sold through Daphne's Boutique and GingerSnaps Boutique in Magnolia, Texas. GingerSnaps Boutique also sells APT products at its Tomball, League City, and Woodlands, Texas locations.

29. APT offers an Amazon store and sells and ships products directly to Texas residents.

30. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and division.

## FACTS

31. Both Magnolia Pearl and APT sell fashion merchandise through various retailers.

32. Magnolia Pearl clothing and accessories are of the highest quality. On average, the garments offered by Magnolia Pearl take thirty days of work before they are complete. Some garments take up to seven months to complete.

33. Magnolia Pearl sells handcrafted perfectly distressed jeans with whimsical embroidery, patching, and applique detailing. The jeans, pictured below, sell for $600.



34.     APT sells significantly lower priced clothing, than Magnolia Pearl.

35.     Despite the differences between the products offered by Magnolia Pearl and APT, boutiques often attempt to sell APT merchandise as a substitute for the high-quality Magnolia Pearl merchandise.

36.     For instance, the boutique Evie Lou Oberlin advertises APT products as ones that fans of Magnolia Pearl will love. Evie Lou Oberlin offers these $60 patched pants as a substitute for Magnolia Pearl's handcrafted pants.



37. Magnolia Pearl does not contend that APT cannot sell lower priced clothing. However, Magnolia Pearl has the absolute right to offer its products only to stores who maintain an inventory of only high-quality, high-end clothing. Magnolia Pearl also has an absolute right to only do business with boutiques willing to only sell clothing made by Magnolia Pearl and other comparable luxury brands.

38. Such conduct is consistent with other luxury brands, who protect their own goodwill and retail prices by allowing their products to be sold only in conjunction with other luxury products.

39. As part of Magnolia Pearl's standard practice, Magnolia Pearl requires retailers not to sell specific types of clothing if they wish to carry the Magnolia Pearl line.

40. On September 11, 2023, Magnolia Pearl sent e-mail correspondence to several retailers—including boutiques who had in the past or were currently APT's customers—as a reminder of the requirements posed by the Acknowledgment of Magnolia Pearl Wholesale License Form.

41. This correspondence was sent to boutiques in this judicial district.

42. On October 16, 2023, APT sent Magnolia Pearl a demand letter seeking $29,218.32 in damages, continuing attorney's fees, and a retraction of the September 11, 2023 acknowledgment. APT's letter contends Magnolia Pearl's September 11, 2023 e-mail correspondence to APT's customers as well as the Acknowledgment of Magnolia Pearl Wholesale License Form constitutes defamation or tortious interference.

43. Subsequently, APT has claimed in writing that it is entitled to at least $96,449.00 from Magnolia Pearl, separate and apart from any demand for attorney's fees.

44. The threatened litigation by APT constitutes and actual dispute that is judicable.

45. APT's threat includes a demand for attorney's fees including the fees necessary to conduct the litigation. APT asserts that its right to recover attorney's fees is allowed pursuant to a statute.

46. Additionally, APT's threat demands that Magnolia Pearl retract its statements. This demanded retraction has a significant financial value, as it jeopardizes Magnolia Pearl's relationships with the boutiques that sell hundreds of thousands of dollars of its products. If Magnolia Pearl were to issue the demanded retraction it could cause serious harm to Magnolia Pearl's business and damage Magnolia Pearl's relationship with its wholesale customers.

## COUNT 1
## <u>DECLARATORY JUDGMENT</u>
### (No Defamation)

47. Magnolia Pearl incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

48. An actual, present, and existing controversy exists between the parties regarding whether the September 11, 2023 e-mail correspondence between Magnolia Pearl and APT's customers as well as the Acknowledgment of Magnolia Pearl Wholesale License Form constitutes defamation.

49. The September 11, 2023 acknowledgement states:

The Magnolia Pearl Brand is built on providing unique, exquisite quality clothing and accessories to customers. This is a reminder that the Magnolia Pearl Wholesale License states:

You agree to only sell new Magnolia Pearl merchandise and merchandise that complements Magnolia Pearl merchandise. You agree not to market or sell copies or imitations of Magnolia Pearl merchandise or the work of any design that mimics or cheapens the image of Magnolia Pearl.

There are certain brands that confuse Magnolia Pearl Customers when placed in retail stores with Magnolia Pearl products and those brands serve to dilute the value of Magnolia Pearl products. Therefore, it is necessary for Magnolia Pearl to only authorize and sell products to retailers who do not carry brands that dilute the Magnolia Pearl brand including but not limited to . . . The Paper Lace [APT] . . . .

50. Magnolia Pearl seeks a declaration from this Court that Magnolia Pearl's September 11, 2023 e-mail correspondence to APT's customers, as well as the Acknowledgment of Magnolia Pearl Wholesale License Form, does not constitute defamation. Specifically, at no point whatsoever did Magnolia Pearl publish a false statement regarding APT or its customers that was reasonably capable of a defamatory meaning.

51. The use of the disjunctive language makes clear that any of the categories listed in the letter might apply to APT. Whether or not APT cheapens or dilutes the value of Magnolia Pearl

products or the Magnolia Pearl Brand is not capable of being proven true or false. As a such, these statements are non-actionable subjective opinion that cannot support a defamation claim.

52. Additionally, as illustrated by the pictures above, these statements were made in good faith and, to the extent the statements can be proven true or false, are true.

53. The language of the September 11, 2023 e-mail correspondence to APT's customers and the Acknowledgment of Magnolia Pearl Wholesale License Form are not "of and concerning" APT because that language speaks only to some of APT's products and not to the brand as a whole.

54. Magnolia Pearl is entitled to a declaration that its September 11, 2023 communications are not defamatory towards APT.

## COUNT II
## DECLARATORY JUDGMENT
### (No Tortious Interference)

55. Magnolia Pearl incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

56. An actual, present, and existing controversy exists between the parties regarding whether the September 11, 2023 e-mail correspondence between Magnolia Pearl and APT's customers as well as the Acknowledgment of Magnolia Pearl Wholesale License Form constitutes tortious interference.

57. Magnolia Pearl also seeks a declaration from this Court that Magnolia Pearl's September 11, 2023 e-mail correspondence to APT's customers as well as the Acknowledgment of Magnolia Pearl Wholesale License Form did not constitute tortious interference. Specifically, at no point whatsoever did Magnolia Pearl willfully and intentionally interfere with an existing contract of APT, or its wholesale customers, in merely reminding retailers of an already existing

agreement not to market or sell copies or imitations of Magnolia Pearl merchandise or the work of any design that mimics or cheapens the image of Magnolia Pearl.

58. Further, Magnolia Pearl's actions are privileged as a bona fide exercise of its own rights. Instead, Magnolia Pearl acted in good faith to further its own interests and did not use wrongful means to further its own interests.

59. Magnolia Pearl is entitled to a declaration that its September 11, 2023 communications did not tortiously interfere with APT's business relationships.

## REQUEST FOR RELIEF

Magnolia Pearl requests this Court enter judgment in its favor against APT, declaring the September 11, 2023 e-mail correspondence between Magnolia Pearl and APT's customers as well as the Acknowledgment of Magnolia Pearl Wholesale License Form does not constitute defamation or tortious interference, and granting Magnolia Pearl any other and further relief deemed just and appropriate.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:   */s/ Claudine G. Jackson*
      Claudine G. Jackson
      Texas State Bar No.: 00793800
      Phelps Dunbar LLP
      201 Main Street, Suite 1350
      Fort Worth, Texas 76102
      Telephone: 817 386 1166
      Facsimile: 817 386 1170
      Email: claudine.jackson@phelps.com

      Yumna S. Khan, *pro hac vice forthcoming*
      Texas Bar No. 24134467
      910 Louisiana, Suite 4300
      Houston, Texas 77002
      Telephone: 713-626-1386
      Facsímile: 713-626-1388
      Email:  yumna.khan@phelps.com

**OF COUNSEL:**
**PHELPS DUNBAR LLP**

Andrew W. Coffman, *pro hac vice forthcoming*
MS Bar No. 106207
105 East Main Street, Suite 201
Tupelo, MS 38804
Telephone: 662-842-7907
Telecopier: 662-842-3873
Email: andrew.coffman@phelps.com

      **ATTORNEYS FOR PLAINTIFFS MAGNOLIA PEARL, LLC; AND MAGNOLIA PEARL TEXAS, LLC**

12

PD.46857874.1

## CERTIFICATE OF SERVICE

 I certify that a true and correct copy of the foregoing has been served on all known counsel of record on September 17, 2024.

             */s/ Claudine G. Jackson*
             Claudine G. Jackson

PD.46857874.1