UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MAGNOLIA PEARL, LLC, and MAGNOLIA PEARL TEXAS LLC, § § § Plaintiffs/Counter-Defendants, § § v. § § APT DESIGNS INC., *doing business as* The Paper Lace, § § § Defendant/Counter-Plaintiff. § | 1:24-CV-1098-RP |

## ORDER

Before the Court is Plaintiffs/Counter-Defendants Magnolia Pearl, LLC and Magnolia Pearl Texas, LLC's (collectively, "Magnolia Pearl") Motion for Judgment on the Pleadings. (Dkt. 23). Defendant/Counter-Plaintiff APT Designs, Inc. d/b/a The Paper Lace ("APT") filed a response, (Dkt. 27), and Magnolia Pearl filed a reply, (Dkt. 28). After considering the motion and the relevant law, the Court finds that the motion should be granted in part and denied in part.

## I. BACKGROUND

Magnolia Pearl designs, manufactures, and sells clothes and accessories through independent retailers. (Am. Compl., Dkt. 6, at 1). Some boutiques that sell Magnolia Pearl merchandise also sell APT merchandise. (*See id.* at 8). Magnolia Pearl alleges that because APT sells "significantly lower priced clothing" than Magnolia Pearl, boutiques often attempt to sell APT merchandise as a substitute for Magnolia Pearl's. (*Id.* at 6).

Boutiques that carry Magnolia Pearl merchandise must agree, per the "Master Retailer Agreement," "not to market or sell copies or imitations of Magnolia Pearl merchandise or the work of any design that mimics or cheapens the image of Magnolia Pearl." (*Id.* at 2; Dkt. 6-1). On

1

September 11, 2023, Magnolia Pearl sent an acknowledgment to boutiques carrying Magnolia Pearl merchandise—some of which are also current or former APT customers, (Am. Compl., Dkt. 6, at 8)—requesting that they acknowledge their obligation not to carry certain brands, including APT, (*id.* at 2). The acknowledgment states:

> The Magnolia Pearl Brand is built on providing unique, exquisite quality clothing and accessories to customers. This is a reminder that the Magnolia Pearl Wholesale License states:
>
> You agree to only sell new Magnolia Pearl merchandise and merchandise that complements Magnolia Pearl merchandise. You agree not to market or sell copies or imitations of Magnolia Pearl merchandise or the work of any design that *mimics or cheapens the image of Magnolia Pearl*.
>
> There are certain brands that confuse Magnolia Pearl Customers when placed in retail stores with Magnolia Pearl products and those brands serve to *dilute the value* of Magnolia Pearl products. Therefore, it is necessary for Magnolia Pearl to only authorize and sell products to retailers who do not carry brands that dilute the Magnolia Pearl brand including but not limited to . . . The Paper Lace [APT] . . . .

(*Id.* at 9 (emphasis added)).

Magnolia Pearl allegedly required the boutiques to sign the acknowledgment to continue purchasing Magnolia Pearl's products. (Answer & Countercl., Dkt. 17, at 8). A month later, on October 16, 2023, APT sent a demand letter to Magnolia Pearl claiming that several APT customers had canceled pending orders or stated they would not be making future orders because of Magnolia Pearl's communications. (*Id.* at 9). This, according to APT, constituted defamation and tortious interference with APT's business relationships. (*Id.*).

In addition to the September 11, 2023, email and acknowledgement, Magnolia Pearl allegedly made similar statements in "phone calls [] to 3rd parties in 2023 and in 2024." (*Id.*). APT also alleges that Magnolia Pearl "sent out a second defamatory letter on or around July 28, 2024, to one or more 3rd parties with substantially similar language stating that Defendant's brand and products 'cheapen' and 'dilute' the value of Plaintiffs' brand and products." (*Id.* at 10).

On September 17, 2024, Magnolia Pearl filed the instant suit, seeking a declaration that its "September 11, 2023, email and acknowledgement does not constitute either defamation or tortious interference with APT's business relationships." (Compl., Dkt. 1, at 1). Two days later, Magnolia Pearl filed its amended complaint, which seeks the same relief. (Am. Compl., Dkt. 6, at 11).

APT filed its answer, defenses, and counterclaims on December 9, 2024. (Dkt. 19). The counterclaims seek (1) damages for libel and slander; (2) damages for tortious interference with an existing contract; (3) damages for tortious interference with a prospective business relationship; (4) damages for negligence; (5) damages for gross negligence and malice; (6) exemplary damages; and (7) attorney's fees. (*Id.* at 10–20). In sum, the counterclaims substantively reflect Magnolia Pearl's petition for declaratory judgment regarding defamation and tortious interference but adds ordinary negligence and gross negligence claims.

On April 7, 2025, Magnolia Pearl moved for judgment on the pleadings and dismissal of APT's counterclaims with prejudice. (Dkt. 23). First, Magnolia Pearl argues that, because APT's claims are based on the same set of facts, they are all barred by the one-year statute of limitations that applies to defamation claims. (*Id.* at 2). Second, turning to the merits arguments, Magnolia Pearl claims that the statements are not capable of being defamatory because they are not capable of being verified as true or false. (*Id.*). APT filed its response on April 25, 2025, (Dkt. 27), and Magnolia Pearl filed its reply on May 2, 2025, (Dkt. 28).

## II. LEGAL STANDARD

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).

3

"Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001). The Fifth Circuit applies the same standard to a motion under Rule 12(c) as it does for a motion under Rule 12(b)(6). *Id.*, at 313 n.8; *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). In ruling on a Rule 12(c) motion, the Court is confined to the pleadings and must accept all allegations contained therein as true. *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.,* 937 F.2d 274, 279 (5th Cir. 1991).[1]

### III. DISCUSSION

#### A. Defamation

To state a defamation claim, a plaintiff must show the defendant: (1) published a false statement of fact to a third party that was defamatory concerning the plaintiff, (2) while acting with malice or negligence; and (3) in some cases, proof that the plaintiff suffered damages. *Innovative Block of S. Tex., Ltd v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020). In this case, the threshold question is whether the statements are fairly viewed as reasonably capable of defamatory meaning. *See Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018). Whether a statement is reasonably capable of defamatory meaning is a matter of law. *Id.* at 625. If the statement is not reasonably capable of a defamatory meaning, the statement is not defamatory as a matter of law and the claim fails." *Id.* at 632 (quoting *Hancock v. Variyam*, 400 S.W. 3d 59, 66 (Tex. 2013)).

"'[S]tatements that are not verifiable as false' are not defamatory." *Id.* at 638 (quoting *Neely v. Wilson*, 418 S.W.3d 52, 62 (Tex. 2013) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21–22 (1990)). Thus, statements that cannot be verified, as well as statements that cannot be understood to convey

---

[1] Throughout its motion, Magnolia Pearl requests that the Court grant judgment on the pleadings as to its declaratory-judgment claims and dismiss APT's counterclaims. It treats these requests interchangeably. Because the legal standard for a 12(c) motion is the same as that for a 12(b)(6) motion, and because APT's counterclaims mirror Magnolia Pearl's declaratory-judgment claims, the Court will do the same.

4

a verifiable fact, are opinions which cannot be defamatory. *Tatum*, 554 S.W. 3d at 639; *see also Jones v. Compass Bancshares, Inc.*, 339 F. App'x 410, 412 (5th Cir. July 30, 2009) (per curiam) (holding that a "vague and subjective" statement is "incapable of being defamatory"). "[E]ven when a statement *is* verifiable as false, it does not give rise to liability if the 'entire context in which it is made' discloses that it is merely an opinion masquerading as a fact." *Tatum*, 554 S.W. 3d at 638 (quoting *Bentley v. Bunton*, 94 S.W.3d 561, 581 (Tex. 2002)).

Here, APT contends that Magnolia Pearl's statements that APT merchandise "cheapens the image" and "dilute[s] the value" of Magnolia Pearl merchandise constitute defamation. (Resp., Dkt. 27, at 8). The Court disagrees and finds that they are instead opinions. Whether one brand "cheapens" or "dilutes" another brand is a statement of opinion and not a verifiable fact. *See Khanna v. Banks*, No. 21-cv-5752, 2024 U.S. Dist. LEXIS 119990, at *26 (N.D. Ill. July 9, 2024) (finding the phrase "Derek's design and functionality contributions cheapen[ed] the brand Katy envisioned" "is clearly an expression of opinion, and as such is not actionable"). Magnolia Pearl is merely asserting that it believes that its clothes are better than APT's. This statement is not capable of being proven true or false.

APT argues because Magnolia Pearl merchandise is "sold for a fixed price, it would be very simple to calculate mathematically whether APT's product 'cheapens and dilutes' the fixed price of Plaintiffs' brands." (Resp., Dkt. 28, at 3). According to APT, if its "product truly impacted the value of Plaintiffs' products it would be easily ascertainable from even a perfunctory review of the Plaintiffs' sales data and confirmed by individual interviews of select customers inquiring into their reasons for purchasing." (*Id.* at 9). But the terms "cheapen" and "dilute" are not mathematically verifiable. As APT acknowledges, Magnolia Pearl sells its products at a fixed price. It is therefore unlikely Magnolia Pearl meant APT products had decreased the value of Magnolia Pearl's merchandise. Even if the data or interviews were to reveal an impact on Magnolia Pearl's sales, it is

5

unclear what kind of impact would constitute a cheapening or dilution of the Magnolia Pearl brand. The terms are simply too vague to be verifiable.

The "entire context" of the statements also indicates Magnolia Pearl used the terms in a subjective sense. *See Tatum*, 554 S.W. 3d at 638. In the acknowledgement, Magnolia Pearl begins by stating that its clothes are "unique" and "exquisite." (Am. Compl., Dkt. 6, at 9). The acknowledgement requires boutiques to agree to sell only clothes that "complement[]" Magnolia Pearl merchandise. (Am. Compl., Dkt. 6, at 9). There is no way to prove that Magnolia Pearl's merchandise is not unique or exquisite, or that APT's merchandise does in fact complement Magnolia Pearl's. These are subjective statements of what Magnolia Pearl believes to be its superior quality. Therefore, the entire acknowledgement, in context, reveals that Magnolia Pearl's statements are opinions. The Court will therefore grant Magnolia Pearl's motion for judgment on the pleadings as to APT's defamation counterclaim.[2]

## B. Negligence

APT asserts that Magnolia Pearl's statements were negligent and grossly negligent. (Resp., Dkt. 27, at 13). In doing so, APT relies on the Second Restatement of Torts § 552, which states "one, who in the course of his business, profession, or employment, or in any transaction in which he has pecuniary interest, supplies *false information* for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused by justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the

---

[2] Having determined that the defamation counterclaim fails on the merits, the Court declines to address Magnolia Pearl's argument that APT's claim is time-barred.

information." *Id.* (quoting Restatement (Second) of Torts § 552 (Am. Law. Inst. 1965) (emphasis added)).

APT's negligence theory relies on a finding that Magnolia Pearl provided "false information." As explained in the discussion of the defamation counterclaim, Magnolia Pearl's statements are not capable of being proven false. Therefore, the Court will dismiss APT's negligence counterclaims.[3]

### C. Tortious Interference with an Existing Contract

APT claims that Magnolia Pearl's email and acknowledgment caused customers to cancel their pending orders with APT. (Answer & Counterclaim, Dkt. 17, at 11–12). In response, Magnolia Pearl argues the communications are privileged because "Magnolia Pearl's enforcement of its own contractual rights cannot as a matter of law constitute intentional interference." (Mot., Dkt. 23, at 10). According to Magnolia Pearl, it was merely reminding retailers of an existing agreement not to sell APT's merchandise. (*Id.*). In turn, APT responds that this privilege is not evident on the face of the pleadings. (Resp., Dkt. 27, at 12).

A party is privileged to interfere with the contractual relations of another if: (1) it is done in the bona fide exercise of its own rights, or (2) it has an equal or superior right in the subject matter to that of the party to the contract. *Knox v. Taylor*, 992 S.W. 2d 40 (Tex. Ct. App. 1999). Affirmative defenses can be resolved under the *Twombly/Iqbal* plausibility standard when they are clear on the face of the claim. *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 318 (5th Cir. 2022).

Here, Magnolia Pearl seems to suggest that the boutiques were already bound not to sell APT's merchandise, and therefore, Magnolia Pearl was merely asserting its rights when it contacted the boutiques. But nothing on the face of APT's counterclaims suggests that the boutiques were

---

[3] Having determined that the negligence counterclaims fail on the merits, the Court declines to address Magnolia Pearl's argument that APT's claims are time-barred.

already bound by a preexisting commitment not to sell APT's merchandise. Rather, APT alleges that Magnolia Pearl requested the boutiques sign *new* contracts on September 11, 2023, which provided that they would not sell APT's merchandise. (*See* Answer & Countercl., Dkt. 17, at 8). APT's counterclaim does not provide any basis for establishing Magnolia Pearl's alleged contractual or other rights on which Magnolia Pearl can base a justification defense. The Court finds this counterclaim should not be dismissed based on Magnolia Pearl's alleged privilege.

The next question is whether this counterclaim is barred by the statute of limitations. Here, Magnolia Pearl argues the claims are barred because the sole basis for APT's tortious interference claim is Magnolia Pearl's allegedly defamatory statements. (Mot., Dkt. 23, at 9). When this is the case, Texas courts apply the one-year statute of limitations for defamation. *Nath v. Texas Children's Hosp.*, 446 S.W.3d 355, 370 (Tex. 2014) ("We now similarly conclude that if a tortious interference claim is based solely on defamatory statements, the one-year limitations period for defamation claims applies.").

The Court disagrees. APT's tortious interference claims are not based solely on the defamatory statements but also on the requirement that Magnolia Pearl's business partners sign new contracts preventing the sale or purchase of APT's products. (Resp., Dkt. 27, at 10). Magnolia Pearl focuses on sections of the counterclaims where APT alleges that its customers had cancelled orders based solely on Magnolia Pearl's "libelous statements" or "defamatory written and oral communications." (*See* Answer & Countercl. Dkt. 17, at 11, 13). However, APT alleges elsewhere that customers had cancelled orders based on the "September 11, 2023 written communications," (*id.* at 9), referencing both the defamatory statements and the acknowledgement that Magnolia Pearl customers were forced to sign. Accordingly, the Court finds that the claim of tortious interference

8

with an existing contract is not based solely on the defamation claim and is not barred by the one-year statute of limitations. The Court will not dismiss this claim.

### D. Tortious Interference with a Prospective Business Relationship

APT claims that Magnolia Pearl intentionally interfered with its prospective business relationships by causing clients who had previously ordered products from APT to state they would not be placing future orders. (Answer & Countercl., Dkt. 17, at 13–14). This claim is distinct from APT's tortious interference claim based on customers cancelling pending orders. For the pending orders, the contracts had already been formed. For these prospective business relationships, however, APT does not allege that it had existing contracts with the customers.

For interference with prospective business relationships, the Texas Supreme Court has held that the conduct must be "independently tortious or unlawful" to constitute tortious interference. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 727 (Tex. 2001). "Independently tortious" means that the conduct "would violate some other tort duty." *Id.*; *see also Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). Here, the Court has found Magnolia Pearl's conduct constitutes neither defamation nor negligence, and APT does not allege that Magnolia Pearl committed any other tort. Therefore, APT's tortious interference claim based on these prospective business relationships must be dismissed.[4]

### E. Attorney's Fees

APT seeks attorney's fees pursuant to Tex. Civ. Prac. And Rem. Code. § 37.009. (Answer & Countercl., Dkt. 17, at 9). That statute makes attorney's fees recoverable, under some circumstances, when a party prevails in a Texas declaratory-judgment action. Magnolia Pearl argues, however, that the statute is a state procedural rule, which has no application in federal courts sitting in diversity, as

---

[4] Having determined that the counterclaim for tortious interference with a prospective business relationship fails on the merits, the Court declines to address Magnolia Pearl's argument that APT's claim is time-barred.

this Court does. *See Utica Lloyd's v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998). APT concedes in its response that this Court would be justified in dismissing APT's claims for attorney's fees. Accordingly, APT's claims for attorney's fees are dismissed.

### F. Exemplary Damages

Finally, Magnolia Pearl argues that APT's claim for exemplary damages, though plead as an independent cause of action, should be dismissed because the count does not state an independent claim for relief. (Mot., Dkt. 23, at 14). Because the Court declines to dismiss APT's claim of tortious interference with an existing contract, the Court will not dismiss APT's claim for exemplary damages in connection to that claim only. However, exemplary damages are not an independent cause of action and should not have been plead as such.

### IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Magnolia Pearl's Motion for Judgment on the Pleadings, (Dkt. 23), is **GRANTED IN PART AND DENIED IN PART**. Specifically, the motion is denied with respect to the parties' claims based on tortious interference with an existing contract. The motion is also denied with respect to the claim for exemplary damages as a form of relief for tortious interference with an existing contract.

All other claims are **DISMISSED WITH PREJUDICE**.

**SIGNED** on July 25, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE